UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSE HILLS, JR., ET AL.                                   CIVIL ACTION

VERSUS                                                     NO. 15-5736

LASHIP, L.L.C., ET AL.                                     SECTION "S" (3)

**ORDER**

Before the Court are Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment [Doc. #142] and Defendant's Motion for Summary Judgment as to Plaintiff Eugene Watson. [Doc. #137]. Both motions are opposed, and the parties have filed replies to both opposition memoranda. Also before the Court is the Motion to Compel Production of Documents [Doc. #162] filed by plaintiffs. This motion too is opposed, and plaintiffs have replied. Having reviewed the pleadings and the case law, the Court rules as follows.

**I.    Factual Background**

This case has a long and tortuous history. Suffice it to say, six plaintiffs originally sued defendants LaShip, L.L.C. ("LaShip") and Abbie Champagne alleging, *inter alia*: 1) Section 1981 Discrimination; 2) Section 1981 Retaliation; 3) Title VII Discrimination; 4) Title VII Retaliation; 5) State-law Discrimination; 6) Family and Medical Leave Act Violations; 7) State-law Retaliation; and 8) Negligent Hiring, Retention, and Supervision. Plaintiffs also sued Abbie Champagne, an employee of LaShip, alleging: 1) a violation of criminal statute La. Rev. Stat. § 14:45(A)(1); and 2) a violation of criminal statute La. Rev. Stat. § 14:107.2(A).

After motions to sever and to consolidate, the withdrawals of numerous plaintiffs' attorneys, and motions to continue given the awkward procedural posture of the lawsuit, four plaintiffs remain represented by counsel, one proceeds *pro se*, and the Court dismissed one from the lawsuit. Eugene Watson is one of the plaintiffs represented by counsel. Watson is a

carpenter who worked at the shipyard for LaShip who started in March 2009 at $16.00 an hour. He alleges denial of pay raises and unfair pay, as well as racist jokes and commentary. Specifically, Watson asserts claims for (1) race and color discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and La. Rev. Stat. § 23:332, (2) retaliation pursuant to Title VII, Section 1981, and La. Rev. Stat. § 23:332, and (3) a hostile-work environment. The specific facts surrounding Watson's claims will be outlined below.

## II. The Motion for Summary Judgment

### A. Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Materiality" is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

2

*Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

**B.  Law and Analysis**

**i.  Claim for Race Discrimination**

Watson alleges that LaShip discriminated against him in the following ways: (1) He was paid less than white carpenters of comparable skill and experience; (2) He was subjected to less desirable working conditions; (3) LaShip intentionally discriminated against him by terminating

3

him on the basis of his race; and (4) He was subjected to a hostile-work environment based on severe and pervasive harassment based on his race or color, which LaShip fostered, ratified, failed to prevent, or remedy.

A claim of employment discrimination may be established through either direct or circumstantial evidence. *McCullogh v. Houston Cnty. Tex.*, 297 Fed. Appx. 282, 286 (5th Cir. 2008). Direct evidence "is evidence that if believed, proves the facts of discriminatory animus without inference or presumption." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 n.6 (5th Cir. 2004). If no direct evidence exists, a plaintiff must support his claim through circumstantial evidence.

Allegations of discrimination based upon circumstantial evidence are analyzed under the now-familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, a claimant must first establish a *prima facie* case of discrimination. If a plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the questioned employment action. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). If the defendant successfully meets its burden, the plaintiff must then prove that the defendant's proffered reasons were a pretext for discrimination. Because Watson offers no direct evidence of discrimination, his claims of discrimination must be analyzed under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, when the alleged discrimination resulted in termination, *a prima facie* case requires the plaintiff to show that: "'(1) [he] is a member of a protected class; (2) [he] was qualified for her position; (3) [he] was subject to an adverse employment action; and (4) [he] was replaced by someone outside the protected class,' or, in the

case of disparate treatment, . . . . 'that others similarly situated were treated more favorably.'" *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir. 1999)). Although the evidentiary burdens shift between the parties in the *McDonnell Douglas* analysis, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains [at] all times with the plaintiff." *Raggs v. Miss. Power & Light, Co.*, 278 F.3d 463, 468 (5th Cir. 2002).

    a.    **Claim for Less Pay**

With regard to Watson's claim that he was paid less than white carpenters, the evidence reveals that Watson's allegations fail. LaShip payroll records demonstrate that numerous white carpenters were paid less than Watson, who received several raises over the course of his employment. [Doc. #137-3 at pp. 72-74]. LaShip's established policy dictates that carpenters are hired at a rate of $12.00 to $20.00 per hour, depending on their prior work experience and level of carpentry skill. [*Id.*]. Indeed, Watson cannot dispute the fact that several white carpenters were hired at a lower starting wage than that paid to him. [*Id.* at pp. 75-77].

Michael Naquin earned $15.00 per hour, Eric Arabie earned $12.00 per hour, Patrick Williams earned $13.00 per hour, Karl Champagne earned $14.00 per hour, Samuel White, Jr. earned $17.00 per hour, and Louis Harman earned $20.00 per hour. [*Id.* at pp.72-74]. Watson started his carpentry position at $16.00 per hour at North American Fabricators, L.L.C. ("NAF") – a company related to LaShip – and was paid a starting rate of $20.00 per hour when he transferred to LaShip. [*Id.* at p. 82]. Moreover, although these white carpenters also received raises like Watson, he does not dispute that none of them was ever paid more than him. [*Id.* at pp. 87-88].

The highest wage earned by Naquin was $19.50, by Arabie was $15.00, by Williams was $13.00, by Champagne was $22.50, by White was $18.50, and by Harman was $21.50 per hour.106 Watson earned $23.60 at the time of his termination. [*Id.*].

In his first EEOC charge, Watson specifically alleged that two white carpenters, Jimmy Verret and Edward Davis, were paid more than he was paid. [*Id.* at p. 110]. Of the two white carpenters that Watson identified as earning more than him, Verret had more work experience and experience as a foreman, and Davis had better attendance and work productivity. [*Id.* at pp. 72-74]. Verret's and Davis's slightly higher wages are consistent with LaShip's established policy to compensate carpenters at rates commensurate with each individual's work experience and skill level, and provide raises on an individual basis considering evaluations, job performance, productivity, and attendance. [*Id.*]. This compensation policy is – from the evidence produced to the Court – legitimate and non-discriminatory. Watson concedes that Verret worked previously as a boat carpenter before coming to LaShip and that he was unaware of Verret's prior foreman experience. [*Id.* at p. 36]. Yet he offers no evidence suggesting Verret was paid a higher wage because of his race rather than due to his prior carpentry and foreman experience. Watson also admits that he had no previous foreman experience and had not worked as a boat carpenter before coming to LaShip. [*Id.* at pp. 24-25]. In addition, Watson admits that he has no evidence to rebut the fact that Davis had a better attendance record and production rate than him. [*Id.* at p. 36].

That LaShip promoted Bradley Jacobson, and not Watson, to foreman does not indicate racial discrimination. In his EEOC charge, Watson alleged that Jacobson was hired and promoted over himself despite that Jacobson had less service time than him and had a disciplinary history at another site. [*Id.* at p. 110]. The undisputed facts show that Jacobson had only one disciplinary

6

write-up for absenteeism at his previous job site. [*Id.* at pp. 72-74]. Watson, on the other hand, had five written reprimands for absenteeism and unexcused early departures, the last of which was a final warning. [*Id.* at pp. 88-103]. Moreover, Jacobson had prior foreman experience while Watson admits that he had none. [*Id.* at pp. 15-25]. Watson's only foreman experience was when he acted as a temporary foreman for one week at LaShip. [*Id.* at pp. 40-41]. The Court finds that Jacobson was promoted for the legitimate, non-discriminatory reasons that he had prior foreman experience working for a related company and less disciplinary write-ups than Watson.

Watson also received the typical pay increase given to temporary foremen. Under LaShip policy, carpentry foremen receive $28.00 per hour; however, temporary foremen only receive a pay increase of $2.00 more than their usual rate of pay. [*Id.* at pp. 72-74]. Watson admits that he was paid $2.00 more than his usual rate of pay for his time as a temporary foreman. {*Id.* at p. 40]. Accordingly, Watson's claims for discriminatory pay fail as the $2.00 increase was given to all temporary foremen regardless of race as a matter of policy.

   b.   **Less Desirable Working Conditions**

As to Watson's claim he was subjected to less desirable working conditions, he testified at his deposition that "[a] couple of times" during his employment, he was assigned the job of installing insulation in a ship's stack, which he described as an uncomfortable place to work because of the close quarters. [*Id.* at pp. 68-69]. The Fifth Circuit has held that to show an adverse employment action in a Title VII case, "the plaintiff must produce evidence of an 'ultimate employment decision.'" *Smith v. Harvey*, 265 Fed. Appx. 197, 202 (5th Cir. 2008). Moreover, the Fifth Circuit has held that "ultimate employment decisions" include only actions such as "hiring, granting leave, discharging, promoting, or compensating." *Id.* As such, claims of less favorable

7

job assignments do not amount to an ultimate employment decision. *Ellis v. Principi*, 246 Fed. Appx. 867, 870 (5th Cir. 2007). This standard exists because "[o]therwise every trivial personnel action that an . . . employee did not like would form the basis of a discrimination suit." *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *see also Fortenberry v. Texas*, 75 Fed Appx. 924, 927 (5th Cir. 2003) (finding that allegations of an "unfair reprimand," being "verbally mistreated," and being given a "bad and allegedly inaccurate evaluation" did not rise to the level of an ultimate employment decision); *Hockman v. Westward Comm., L.L.C.*, 122 Fed. Appx. 34, 747-78 (5th Cir. 2004) (listing discriminatory acts that are not ultimate employment decisions, including criticism, reprimanding the plaintiff for not being at assigned work station, threatening to fire, being placed on "final warning", issuing directive to "not be sick on Tuesdays," and requiring medical documentation for doctors' appointments). The Court finds that on approximately two occasions, during six years of employment, Watson received what he considered an undesirable assignment does not rise to the level of an adverse employment action.

### c. Termination

LaShip contends that Watson was not terminated because of his race. It maintains that the undisputed facts demonstrate that Watson, along with six other carpenters, were all terminated due to a reduction of force necessitated by lack of work, a reduction that also resulted in the layoffs of hundreds of other LaShip workers of different races. This lack of work was due to a decrease in prices and work overall in the oil and gas industry, which LaShip services. [Doc. #137-3 at p. 74]. Watson acknowledges his awareness of the huge decrease in the price of oil at that time, and that it resulted in the loss of thousands of jobs in the oil industry. [*Id.* at pp. 64-65]. Watson admits that

he attended a meeting in February of 2015 at which Daniel Fanguy explained the necessity of a reduction in force and the upcoming layoffs. [*Id.* at pp. 62-64]. Moreover, out of the seven carpenters laid off during the reduction in force, LaShip notes that two were white, two were Hispanic, and three were African American. [*Id.* at p. 74]. Of the two white carpenters identified by Watson as retained by LaShip, Bradley Jacobson and Louis Harman, LaShip argues that Jacobson was actually a foreman and not subject to the reduction of force because of his managerial status, and Harmon was kept on staff due to his exemplary work skills and range. [*Id.*]. LaShip contends that the layoffs were determined based on each carpenter's work productivity and attendance record. [*Id.*]. Thus, LaShip maintains that it was not unreasonable for Watson to be terminated given his lengthy history of attendance problems.

Watson received five disciplinary write-ups for attendance problems during his employment. On June 18, 2009, he received his first reprimand for unexcused absences and unexcused early departures. [*Id.* at p. 88]. He had been absent five days and had eight early departures in the prior few months. [*Id.*]. On December 16, 2010, he was again written up for unexcused early departures. [*Id.* at p. 89]. In the prior six months, he had seventeen early departures and had thirty-three total early departures in 2010. [*Id.*]. Watson received his third reprimand on September 19, 2011 for unexcused early departures. [*Id.* at pp. 90-96]. He had eight early departures and one call-in absence in the prior six weeks. [*Id.*]. On December 28, 2011, Watson was written up for a fourth time for unexcused early departures. [*Id.* at p. 97]. From the time of his last write-up, only three months before, he had ten early departures and had arrived late twice. [*Id.*]. Watson's fifth reprimand for tardiness and unexcused early departures was issued on April 4, 2012. [*Id.* at pp. 98-103]. This write-up was marked as a "final warning." [*Id.* at p. 98].

For his part, Watson alleges numerous times in his pleadings that LaShip terminated the employment of every African-American when it terminated him. But there is no evidence in the record to support this contention, and Watson cites the Court to none. However, and despite LaShip's litany of Watson's reprimands for absences, Laship ignores Watson's next three evaluations, which were universally positive and resulted in three straight raises. LaShip cites reprimands from 2009 through 2012, but Watson's August 2012 evaluation stated: "Last 3 months has been great for Eugene. Has corrected absentee problem. Very effective worker, knows and does excellent work." [*Id.* at p. 83]. He received a raise. [*Id.*]. In December 2013, Watson received another raise, and his evaluation stated: "Eugene is a good carpenter. Does excellent work with lay-out. Clean neat work. Comes to work regularly. Great attitude, serious about his work." [*Id.* at p. 84]. Watson's final evaluation before the layoff was in July 2014. He again received a raise, and the evaluation states: "Excellent worker. We depend on Eugene a lot. Does good clean work." [*Id.* at p. 85]. In other words, and as plaintiff correctly notes, the three most recent evaluations that Watson received had nothing but praise for his work, his work ethic, and his attendance. This directly contradicts Laship's claim that it relied only on "work productivity and attendance record" when it terminated Watson. Given that all of the recent evaluations spoke highly of Watson's work and attendance, the Court finds that a reasonable juror could find that Laship's assertions are simply untruthful. This precludes summary judgment on this claim.

  **ii. Claim for Hostile-Work Environment**

As to Watson's claims of a hostile-work environment, LaShip first argues that Watson failed to exhaust his administrative remedies with the EEOC. To bring a suit on an employment discrimination claim under Title VII, it is well established that a plaintiff must first timely file and

exhaust an EEOC charge. *Otokunrin v. MBNA Tech., Inc.*, No. Civ. A. 3:03-CV-1509-G, 2004 WL 833599, at *4 (N.D. Tex. Apr. 16, 2004). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Otokunrin*, 2004 WL 833599, at *4 (quoting *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990)). "A plaintiff may not circumvent the EEOC filing requirements by raising only a few claims in her EEOC filings, and later suing over every claim arising out of her employment." *Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 840 (E.D. La. 2004). Various courts have held that a plaintiff's claims under Title VII are limited to the allegations in his EEOC charge. *See Otokunrin*, 2004 WL 833599, at *5 (finding that plaintiff had not exhausted administrative remedies with respect to her claims for discrimination based on demotions, hostile work environment, denial of educational opportunities, and class-wide discrimination when her EEOC charge made no mention of any of these claims); *Aucoin*, 355 F. Supp. 2d at 840 (limiting the scope of the plaintiff's claims to those related to the allegations that she made in her EEOC charge).

Here, Watson filed two charges with the EEOC. The first charge alleged racial discrimination and contained allegations that Watson was subjected to different terms and conditions than white employees, was paid less than some white employees, and a white employee was promoted over Watson. [Doc. #137-3 at p. 110]. Watson's second EEOC charge alleged both racial discrimination and retaliation. [*Id.* at p. 112]. In the charge, Watson alleged that white carpenters were hired at a wage higher than he received at hire, and that he was laid off in retaliation for filing his prior EEOC charge. [*Id.*]. Nowhere in either of these charges did Watson make allegations regarding his working conditions or anything relating to a hostile-work

environment. Notably, Watson failed to allege that he had observed nooses or racist graffiti, or was exposed to any racial jokes or commentary. Likewise, Watson has acknowledged under oath that his earlier allegations of segregated bathrooms and water coolers had absolutely no factual basis. [*Id.* at pp. 60-62]. Indeed, Watson's EEOC charges are completely devoid of any reference or inference that Watson was subjected to a hostile-work environment. As such, Watson may not now bring those claims under Title VII as he has not exhausted his administrative remedies with respect to these claims. Accordingly, Watson's claims for a hostile-work environment under Title VII fail as a matter of law.

Watson argues that because he checked the box for "race" on both EEOC charges, said checking necessarily encompassed a claim for a hostile-work environment. While the Court recognizes that the Fifth Circuit has held that "members of the working class who are generally without substantial higher education," cannot be expected to "dot every 'i' and cross every 't' on their way to the courthouse," *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970), this does not save Watson's claim here. In *Lawrence v. United Airlines, Inc.*, No. Civ. A. 3:01-CV-0809, 2002 WL 1489536 (N.D. Tex. July 10, 2002), the court held that "because Plaintiff failed to raise the hostile work environment allegation in the administrative process, the Court finds that Plaintiff failed to exhaust his administrative remedies and Defendant is entitled to judgment on this claim." The *Lawrence* court also held that a claim of race discrimination does not encompass hostile-work environment claims. *Id.* (citations omitted). Watson alleged no facts underlying a hostile-work environment in either of his EEOC charges, and such a failure would not have put the EEOC on notice to investigate a hostile-work environment claim. Watson cannot raise it now.

## C. Retaliation

In order to establish a *prima facie* case of retaliation under Title VII, Section 1981, or state law, Watson must demonstrate that: (1) he engaged in an protected activity; (2) that an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). Notably, the causation requirement for a Title VII retaliation claim requires the heightened "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Here, LaShip contends that it terminated Watson due to a reduction in work force and his attendance records. As the Court discussed above, however, there is a genuine issue of material fact as to why LaShip terminated Watson given the five attendance reports from 2009 through 2012 and the three that followed. And, as Watson correctly notes, Laship may point to the drop in prices to show that it had to lay off somebody. But that does not explain why it laid off *every single African-American* in the carpentry department, including Watson. As the Fifth Circuit has noted "courts have been particularly dubious of attempts by employers to explain away 'the inexorable zero.'" *Capaci v. Katz & Besthoff, Inc.*, 711 F. 2d 647, 662 (5th Cir. 1983).

The Court also finds that there is a genuine issue of fact as to whether the filing of Watson's EEOC charge was a factor in his termination. Temporal proximity between an employee's protected activity and an adverse employment action may provide the causal connection for a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562 n.28 (5th Cir. 2007). Here, less than two months elapsed between the filing of the charge and Watson's

termination. This is the kind of close temporal proximity that gives can give rise to a presumption of retaliation. *See, e.g., Shirley v. Chrysler First Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (finding that two months was sufficient for plaintiff to establish temporal proximity); *Handzlik v. United States*, 93 Fed. Appx. 15, 19 (5th Cir. 2004) (same); *Rogers v. City of B.R.*, Civ. A. No. 14-170, 2016 WL 4035328, at *11 (M.D. La. July 25, 2016) (same). For these reasons and those outlined above, the Court denies the motion for summary judgment as to this claim.

### III. The Motion to Strike

Watson's motion to strike is now moot. Watson moves to strike LaShip's motion for summary judgment on the ground that he needs more discovery – including the depositions of numerous witnesses – before he can adequately respond to it. Because this Court has denied the motion for summary as to Watson's race discrimination claims, this motion is moot because Watson now has time for further discovery given that the discovery deadline is not until February 28, 2019.

The motion is also moot as to Watson's claim for a hostile-work environment. No amount of discovery can render Watson's claim administratively exhausted. That is a procedural issue that cannot be saved by subsequent facts.

### IV. The Motion to Compel

In this motion, Watson disputes LaShip's withholding of three emails listed in its privilege log. While the issue raised are waiver of the attorney-client privilege and whether the emails are privileged in any event, the Court notes that LaShip is amenable to producing the three emails to this Court for *in camera* review. For these reasons, the Court will review the emails *in camera*.

## V. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff Eugene Watson [Doc. #137] is GRANTED IN PART and DENIED IN PART as outlined above. Watson's discrimination claim based on his termination and his claim for retaliation survive summary judgment.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment [Doc. #142] is DISMISSED AS MOOT.

**IT IS FURTHER ORDERED** that the Motion to Compel Production of Documents [Doc. #162] is TAKEN UNDER ADVISEMENT pending this Court's review of the three disputed emails. **No later than three business days from the date of this Order**, LaShip shall produce the three disputed emails to this Court for *in camera* review.

New Orleans, Louisiana, this 8th day of February, 2019.

                                            **DANA M. DOUGLAS**
                                            **UNITED STATES MAGISTRATE JUDGE**